GHASTER PROPERTIES, INC., ET, PLAINTIFFS, *v.* PRESTON, DIRECTOR OF HIGHWAYS, DEFENDANT.
PRESTON, DIRECTOR OF HIGHWAYS, PLAINTIFF, *v.* TROY AND CONSOLITE CORP., DEFENDANTS.
PRESTON, DIRECTOR OF HIGHWAYS, PLAINTIFF, *v.* STEINER AND WENSINGER CO., INC., DEFENDANTS.

Common Pleas Court, Allen County.

Nos. 46311, 46970 and 47003.   Decided April 11, 1962.

*Mr. Willis S. Siferd, Mr. R. A. D'Amico* and *Mr. David M. Gooder,* for Ghaster Properties, Inc., and Ghaster Outdoor Advertising, Inc., plaintiffs in case No. 46311 and for William Troy and Consolite Corp., defendants in case No. 46970 and for David Steiner and Wensinger Co., Inc., defendants in case No. 47003.

*Mr. Mark McElroy,* attorney general, *Mr. Gerald J. Celebrezze, Mr. Joseph R. Ralston* and *Mr. Richard F. Swope,* assistant attorneys general, for E. S. Preston, Director of Highways of the State of Ohio, defendant in case No. 46311 and plaintiff in cases 46970 and 47003.

## Court's Findings and Conclusions

Davison, J. These cases were consolidated for the purpose only of trial and the trial to the Court without the intervention of a jury was conducted upon various dates in November, 1960. By stipulation of counsel and with the consent of the Court the testimony adduced at the trial was transcribed to make the same available to counsel for the purpose of filing trial briefs and in preparation for oral argument. Thereafter and sometime prior to May 22, 1961, the testimony was transcribed and

18

the brief of the Property Owners, the answer brief of the State and the reply brief of the Property Owners were submitted to the Court and on May 22, 1961, the Court heard oral argument in these cases on behalf of both the Property Owners and the State.

The case of *Ghaster Properties, Inc., et al* v. *E. S. Preston, Director of Highways of the State of Ohio,* No. 46311 is an action for a declaratory judgment and an injunction wherein the plaintiff, the Ghaster Properties, Inc., claims to be the owner of three parcels of land in Allen County, Ohio, which have been leased to the plaintiff, the Ghaster Outdoor Advertising Company, which said lessee maintains thereon outdoor advertising signs. These signs are alleged in said petition to be within the definition of those declared to be a nuisance which must be discontinued and removed by the owners under the provisions of Sections 5515.21 to 5515.99, inclusive, and 5531.05 and 5531.06, Revised Code, effective October 2, 1958, and for which failure to remove the same the Property Owners would, under the terms of said Statutes, be subjected to criminal penalties. It is asserted that said Sections of the Revised Code are unconstitutional and that the defendant Director of Highways threatens immediate enforcement of the same. The petition in the *Ghaster case* sets up thirteen grounds on which it is urged the Statutes referred to are unconstitutional and prays that the defendant be restrained from taking plaintiffs' property without due process of law and from enforcing said statutes or as much thereof as attempt to deprive plaintiffs of their property and constitutional rights; for a declaratory judgment determining the validity of said statutes; and that said statutes be declared unconstitutional and void under both the State and Federal Constitutions.

The case of *E. S. Preston, Director of Highways of the State of Ohio* v. *William Troy and Consolite Corporation,* being case No. 46970, and the case of *E. S. Preston, Director of Highways of the State of Ohio* v. *David Steiner and Wensinger Company, Inc.,* case No. 47003, are actions commenced by the Director of Highways under the aforementioned sections of the Revised Code for an order of this Court abating as a nuisance two billboards in Allen County, Ohio, to wit: a Shell billboard in the *Steiner case* and a Howard Johnson's Motor Lodge and Restau-

rant billboard in the *Troy case*, and that such signs be ordered removed from within 660 feet from the edge of the right-of-way of State Route No. 25, Section 0.00, Allen County, Ohio. For convenience at the trial of these cases in consolidated form, the parties, The Ghaster Properties, Inc. and Ghaster Outdoor Advertising, Inc., plaintiffs in case No. 46311; William Troy and Consolite Corporation, defendants in case No. 46970; and David Steiner and Wensinger Company, defendants, in case No. 47003, are all referred to as "Property Owners," and E. S. Preston, Director of Highways of the State of Ohio as defendant in case No. 46311 and as plaintiff in case Nos. 46970 and 47003 is referred to simply as "The State."

Very shortly following the oral arguments of counsel, after the making available of the transcript of testimony in this case and the filing of briefs, the Legislature of Ohio enacted and caused to go into effect as an emergency measure Amended Substitute House Bill No. 922 which repealed Sections 5515.21, .22, .221, .23, .24, and .99, Revised Code, and caused to go into effect at once to wit, on June 28, 1961, new sections of the Revised Code which were given numbers 5516.01, .02, .03, .04, .05, and .99, Revised Code.

Thereafter and on August 4, 1961, there was filed in case No. 46311, being the case of *Ghaster Properties, Inc., et al. v. E. S. Preston, Director of Highways, etc.*, a motion for leave to file supplemental petition, which said motion had attached thereto the proposed supplemental petition which it was desired to file in said case, seeking to restrain and enjoin the Director of Highways from enforcing the provisions of Amended Substitute House Bill No. 922, a declaratory judgment determining the validity of said law, and an order ruling said law to be unconstitutional and void under both the State and Federal constitutions. Oral arguments on said motion were heard by the Court on October 6, 1961, at which time the State raised the question of mootness as to the applicability of the statutes in question to the issues raised at the trial. Thereafter exhaustive briefs on the issue of mootness were filed with the Court by counsel on both sides and the matter was taken under advisement by the Court.

The Court has had under advisement all of the issues raised at the trial and upon motion for leave to file supplemental

petition, and has given careful attention to the extensive transcript of evidence in this case, the various exhibits introduced, the exhaustive briefs of counsel relating to all the matters at issue as between the parties and is cognizant of the serious nature of this litigation.

Temporary restraining order was issued in case No. 46311 on March 2, 1962, on application of the plaintiffs in said case, restraining the Director of Highways from proceeding with the enforcement of the statutes in question pending the outcome of said case. Hearing on said temporary restraining order was held on March 12, 1962, at which time said restraining order was continued in force pending the disposition of said case. Also at said time the Court ruled upon the motion for leave to file supplemental petition and granted the same, and held that the evidence adduced would be taken by this Court as applicable to the issues of unconstitutionality raised in the original petition in said case as against the enactment of the legislation contained in Amended Substitute House Bill No. 922, as well as against the sections of the old law attacked in said petition. The answer of the defendant Director, being a general denial, is regarded by the Court as applicable and properly raises said issues. The Court is of the opinion that the gist of the actions heretofore tried in these cases has not been changed by the simultaneous repeal of the former law and the enactment of the new statutes, but that the fundamental rights and liabilities of the parties remain the same and are therefore protected.

At the trial of these cases the Property Owners moved to strike Stipulation Exs. 19 and 20. The State moved to strike Stipulation Exs. 15, 17, and 18. The Court reserved ruling on these motions. The Court now overrules all of said motions, and the said exhibits remain in evidence. The objections go to the weight of said exhibits rather than to their relevancy.

Coming now to consider the issues involved as between the parties in the three cases tried, the Court finds upon the issues joined in favor of the Property Owners and against the State, in this to wit: that the provisions of the former statutes, as well as the existing law, are unconstitutional in that they deprive the Property Owners of their property without due process of law, being an unwarranted exercise of the police power of the State in a manner which has no substantial relation to the

public health, morals, safety or welfare in violation of Article I, Sections 1 and 19 of the Ohio Constitution and as being in violation of the Constitution of the United States, to wit: Article XIV of the amendments thereto, Section 1, wherein it is provided that no State shall deprive any person of life, liberty, or property without due process of law; and as being a denial of the equal protection of the laws in violation of said Article XIV, Section 1 of the Constitution of the United States.

It is the opinion of this Court that the statutes involved in these cases constitute a "taking" of the property of the Property Owners. See *Akron* v. *Chapman*, 160 Ohio St., 382; *Curtiss* v. *City of Cleveland*, 170 Ohio St., 127. As is indicated in the cases cited, the word "taking" describes what is done when the State interferes with, destroys or appropriates property under the police power as well as under the power of eminent domain. The State contends that no "taking" has occurred here, but that signs are merely "regulated" in the public interest. The Property Owners contend that the interference with their property by this legislation amounts to a "taking;" that their rights in their property are, in effect, destroyed by the prohibitions of the Statute. The Court finds that these statutes constitute a "taking." The interference provided for by these statutes constitutes a deprivation of a valuable property right—the right to use their property within the proscribed limits. Although the State may acquire nothing which it actually puts to its own use as is done when land is appropriated to become a part of a roadway, nevertheless, the Property Owners' property is lost—"taken"—just as effectively as is that of any owner whose property may be "taken" for an admitted public use.

The issue here is whether this taking is in violation of due process. The Court finds that it is. In order to be a constitutional exercise of the police power of the State, this legislation must bear a substantial relation to the public health, morals, safety or welfare. See *Curtiss* v. *Cleveland supra*. See also *Benjamin* v. *City of Columbus*, 167 Ohio St., 103, the fifth paragraph of the syllabus, which reads as follows:

"Although almost every exercise of the police power will necessarily either interfere with the enjoyment of liberty or the acquisition, possession and production of property, within

the meaning of Section 1 of Article I of the Ohio Constitution, or involve an injury to a person within the meaning of Section 16 of Article I of that Constitution, or deprive a person of property within the meaning of Section 1 of Article XIV of the Amendments to the Constitution of the United States, an exercise of the police power having such an effect will be valid if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary.''

The contention of the State is that this legislation bears a substantial relation to the public safety, in that it is designed to prevent accidents on Interstate Highways on new locations by prohibiting the erection or maintenance of advertising signs within 660 feet of the edge of the right-of-way of said highways. The Property Owners contend no such relation between the Acts and highway safety exists. The Court finds from the evidence in these cases that there is no substantial relation between said legislative acts and public safety.

There is no evidence to show that any accident on any highway was ever caused at any time by any billboard or other outdoor advertising device as defined in either the old or the new statutes. The plaintiffs in case No. 46311 propounded to the defendant Director of Highways, E. S. Preston, certain interrogatories which were answered by the defendant. In answer to interrogatory No. 25 as to whether the Department of Highways of the State of Ohio had any official record which shows or purports to show that any accident has ever been caused on any State Highway in the State of Ohio by an advertising sign located off the highway right-of-way on private property, the answer was ''No.'' In answer to interrogatories No. 27 and No. 29, the defendant Director of Highways also stated that he did not know of any official record of any state or local government, department, division, bureau, official, officer, agency or authority in the State of Ohio which shows or purports to show that any accident has ever been caused on any highway, street, or road of any kind in the State of Ohio by an advertising sign located off the right-of-way on private property and that he did not know of any official record of any Federal, state or local government or any department or agency thereof in the United

States which shows or purports to show that any accident was ever caused by any such advertising sign.

Studies have been made and copies of them have been introduced into evidence utilizing various investigative procedures and mathematical formulas involving the arbitrary use of greater or lesser numbers of variables, from which, through mathematical calculations, results may be obtained which can be interpreted as applying to this issue. If the process is utilized of using a large number of variables which are assumed to affect the occurrence of accidents on highways and the mathematical procedure for the obtaining of a partial correlation coefficient, it is established that the relationship between advertising signs along highways and accidents on such highways is negligible. This is the gist of the so-called Michigan study (Stipulation Ex. No. 18), in which study a great number of variables arbitrarily assumed to influence highway accidents, including outdoor advertising devices, were utilized. The so-called Iowa study comes to the same conclusion (Stipulation Ex. No. 16). These surveys are objective studies, conducted in accordance with what the Court believes from the evidence adduced in these cases to be recognized and acceptable investigating, evaluating and statistical methods. The so-called Minnesota study (Stipulation Ex. No. 19) utilized only three variables, namely outdoor advertising devices, traffic volume, and accidents. Due to the limited number of variables used in the mathematical analysis employed, in addition to the admitted lack of certain components affecting highway accidents in the calculation, the weight of the Minnesota study is regarded by the Court as negligible, a conclusion apparently shared by counsel for the State as he makes no reference to nor does he rely upon it in his argument in his otherwise exhaustive briefs. No substantial relation between advertising devices as defined in the statutes in question and public safety appears from the record of the evidence adduced in the trial of these cases. If any such relation is shown at all, it is to the effect that such devices are beneficial to safety in that they tend to alert drivers, to keep them actively attentive to roadway conditions and tend to prevent "highway hypnosis."

Whatever one may think regarding such advertising devices being ugly or unsightly, such considerations are not the

test of constitutionality. The police power of the State cannot be invoked for aesthetic reasons and property rights cannot be invaded on any such basis under said power. As the Ohio Supreme Court, through the opinion of Judge Allen, said in holding unconstitutional a zoning ordinance which, although ostensibly based upon considerations of health, was found in fact to be based wholly upon aesthetic considerations, in the case of *Youngstown* v. *Kahn Building Co.*, 112 Ohio St., 654, at pages 661, 662:

"The police power, however, is based upon public necessity. There must be an essential public need for the exercise of the power in order to justify its use. This is the reason why mere aesthetic considerations cannot justify the use of the police power. *Haller Sign Works* v. *Physical Culture Training School*, 249 Ill., 436, 94 N. E., 920, 34 L. R. A. (N. S.), 998, and note. It is commendable and desirable, but not essential to the public need, that our aesthetic desires be gratified. Moreover, authorities in general agree as to the essentials of a public health program, while the public view as to what is necessary for aesthetic progress greatly varies. Certain legislatures might consider that it was more important to cultivate a taste for jazz than for Beethoven, for posters than for Rembrandt, and for limericks than for Keats. Successive city councils might never agree as to what the public needs from an aesthetic standpoint, and this fact makes the aesthetic standard impractical as a standard for use restriction upon property. The world would be at continual seesaw if aesthetic considerations were permitted to govern the use of the police power. We are therefore remitted to the proposition that the polie power is based upon public necessity, and that the public health, morals, or safety, and not merely aesthetic interest, must be in danger in order to justify its use."

The *Illinois case* cited by Judge Allen, significantly, is a case involving the constitutionality of a statute making it illegal to place billboards and advertising signs within 500 feet of a public park or boulevard in certain cities in the State of Illinois. The Court in that case held the statute unconstitutional as being an unreasonable attempt to limit the proper use of private property for aesthetic reasons not being justified under the police power.

This Court is required to render its decision on the basis of the evidence that was adduced during the trial of these cases, and that evidence shows no public necessity, nor public need to exist for said legislation, nor does it show any substantial relationship between, the provisions of the statutes involved herein and the public health, safety, morals, or welfare. The Court finds from the evidence that the advertising signs of the Property Owners in these cases are not a threat to public safety on the highway, namely Interstate Route No. 75 upon which they are located and do not constitute any traffic hazard upon said highway.

The Court further finds from all the evidence in these cases that said advertising devices belonging to the Property Owners in these cases are not either public or private nuisances.

The Court has read with interest the Advisory Opinion of the Justices of the Supreme Court of New Hampshire cited by the State appearing in 169 Atlantic 2d, 762. In that State advisory opinions of the Justices of the Supreme Court are permitted to be rendered. Apparently the House of Representatives of the Legislature of New Hampshire submitted to the Justices a proposed statute restricting outdoor advertising on the Interstate Highway System and inquired whether the same would violate any constitutional provisions. Unfortunately the proposed statute itself is not set forth in the opinion. As to that particular bill the Justices were of the opinion that the same would not violate due process, but pointed out very clearly that only billboards which are nuisances may be removed without compensation to owners and that the removal of a billboard which is not *in fact* a nuisance should be required only on payment of compensation. The Court in the instant cases searches the record in vain for evidence that any of the billboards involved in any of the cases at bar constitute a nuisance in fact.

This leads us to a further consideration of the contention raised by the Property Owners that the taking of their property by interfering with and prohibiting its use is not a taking under the police power but is, in fact, a taking of property without compensation. To this Court, this contention appears to be well taken. Certainly the wresting from the Property Owners of property which is not, in fact, a nuisance without compensating the Property Owner therefor is a violation of constitutional

limitations. In the case of *Ottawa* v. *Odenweller Milling Company*, 57 Ohio App., 170, the Village of Ottawa passed an ordinance prohibiting the erection of a grain elevator at a point where it would obstruct the view of railroad tracks at a crossing. In holding the ordinance unconstitutional the Third District Court of Appeals of Ohio said at page 186:

"As an incident to the constitutional rights of acquiring, enjoying, possessing, and protecting property, an owner of real estate is entitled to erect such structure thereon as may be necessary or convenient to his enjoyment thereof, subject only to the constitutional limitation that the exercise of such right shall be subservient to the public welfare, and the mere fact that the erection of certain structures thereon may tend to obstruct the view of railroad tracks, and of persons approaching a public railroad crossing, does not of itself preclude the owner from the right of erection incident to such ownership, and he can be deprived of such right only by condemnation for public use and payment of compensation, in accordance with the provisions of Section 19 of Article I of the Constitution."

This Court has found that none of the billboards involved in the litigation under consideration are nuisances in fact. Billboard advertising is not inherently a nuisance. See *Central Outdoor Advertising, Inc.* v. *Village of Evendale*, 54 Ohio Opinions, 354. See also 39 American Jurisprudence, 294, Section 13, wherein is summarized the rule as follows:

"The power of the legislature over nuisances is subject to constitutional limitations. It is confined to the prohibition or regulation of those acts which injure or otherwise interfere with the rights of others. It cannot be made a cloak for confiscation or for withdrawing property from the protection of the law. The legislature has no power arbitrarily or capriciously to declare any or every act a nuisance, and cannot enlarge its power over property or pursuits by declaring them nuisances; nor can it by mere declaration make that a nuisance which is not so in fact and thereby destroy or prevent lawful use of property. . . ."

"The action of the legislature in this regard is subject to review by the courts. What is a nuisance and whether the designation of a particular subject as a nuisance is within the legislative power are judicial questions. But a good deal must

be left to the discretion of the legislature, and if the object to be accomplished is conducive to the public interests, it may exercise a large liberty of choice in the means employed, and only in extreme cases will the courts go behind the legislative determination. The legislature, however, usurps judicial power when it declares an act a nuisance when it is not so, and commands the court to enjoin it without proof that it will cause any injury or danger.''

This Court has examined the recent case cited by the State, namely *New York State Thruway Authority* v. *Ashley Motor Court, Inc.*, 10 New York 2d, 151, affirmed in 10 New York 2d, 814. The exact language of the New York statute, except for a definite recital of specific objectives and standards is not set forth in the opinion. The New York Court found the statute to be reasonably related to a legitimate legislative purpose. There can be no dispute that it is within the prerogative of legislative authority to enact legislation in the exercise of police power invading property rights whenever the same bears a real and substantial relation to public safety and is not unreasonable or arbitrary. The New York Court set forth a truism when it stated that mere disagreement with the assertion that advertising devices interfere with safe driving and constitute a traffic hazard may not cast doubt on the statute's validity and that a statute will not be disturbed unless manifestly unreasonable. This Court does not know, of course, what evidence was adduced in the trial of the *New York* case. This Court must act only upon evidence which was adduced before it at the time of trial, and from that evidence this Court can come to no other conclusion but that the prohibitions against the erection and maintenance of advertising devices as contained in the Ohio Statutes bears no real and substantial relation to public safety and is consequently arbitrary and unreasonable.

The argument advanced by the New York Court in the case of *New York State Thruway Authority* v. *Ashley Motor Court, Inc., supra,* that, because advertising devices are obviously of no use unless there is a highway to bring the traveler within view of them, therefore what is taken by a state when it prohibits the erection and maintenance of billboards along such highway is merely the value which the throughway itself has added to the land and therefore the property owner cannot

28

complain, is an ingenious one but to this Court, wholly fallacious. According to such reasoning no property owner could complain against any of his property rights being taken from him by the one responsible for having brought about a situation whereby his property values were increased, to the extent of the increase. That is to say, if one's property was increased in value because of the erection in close proximity to it of either a public or private installation, then the owner could not complain if the builder of the installation, either public or private, invaded the property rights of the owner to the extent of the increase in value thus brought about. Many factors are involved in the enhancement of the value of real estate. Proximity to other buildings and establishments always is a factor in either an increase or decrease in the market value of land. Certainly this alone does not entitle the person who has created the building or establishment to capture for himself or for his own use or benefit the portion of the value of the land owner's property which is represented by such increase in value. Nor does such a situation entitle the one whose construction of such establishment has increased the value of adjoining or nearby lands to prohibit the owner of such lands from enjoying the benefits of the increased values thus created. Such argument is novel and to this Court is repugnant and certainly should have no place in the determination of issues involving the constitutionality of statutes.

It is contended by the Property Owners that the statutes under consideration herein are discriminatory and deny equal protection of the laws in violation of the 14th Amendment to the Constitution of the United States and in violation of Article I, Section 2 of the Ohio Constitution. The existing Act (Section 5516.02, Revised Code), excepts from its operation ''signs advertising the sale or lease of the property upon which they are located'' and also ''advertising devices indicating the name of the business or profession conducted on such property or which identify the goods produced, sold, or service rendered on such property.'' The Act further provides (Section 5516.03, Revised Code), that the Director of Highways is empowered to promulgate rules and regulations ''consistent with the safety of the traveling public and consistent with the national policy'' as to the so-called ''on premises'' signs thus excepted. The ques-

tion immediately arises as to why a sign, which may be found to be consistent with safety on premises where a product is sold or produced or a service rendered which is the subject of the advertisement on the sign, would be unsafe and a hazard to highway safety and a nuisance subject to be destroyed if such sign was upon premises in exactly the same relative position to the highway but located on premises where it did not advertise goods produced or sold or services rendered thereon. It would seem that such a sign would be just as much a nuisance and a hazard to safety on the one location as upon the other. Surely this is not a reasonable classification and denies the Property Owners herein the equal protection of the laws. See case of *Central Outdoor Advertising Company, Inc.* v. *Evendale*, 54 Ohio Opinions, 354. In that case the Court held unconstitutional an ordinance of the Village of Evendale which sought to prohibit the erection of billboards within the Village limits, but made an exception of billboards advertising the business or product of an owner or occupant of the premises on which the same was located. In so doing the Court said, at page 356, "Billboard advertising is not inherently a nuisance whether used as accessory and incidental to the main business conducted on the premises or is the exclusive use to which the premises are put."

See also the case of *Triborough Bridge and Tunnel Authority* v. *Crystal*, 153 N. Y. S. 2d, 387. In this case the statute provided that "no outdoor advertising sign or device which refers to any subject other than the business actually conducted on the premises or to sale or rental of such premises . . . shall hereafter be erected within 500 feet of the Whitestone bridge project." In holding this statute unconstitutional as establishing a classification which was arbitrary and unreasonable the Court used the following language at page 341:

"A sign advertising a business conducted on the premises may be just as distracting, just as objectionable, or, if aesthetics is the objective, just as ugly, as a sign advertising a business not conducted in the building. The standard of regulation must be designed to have some reasonable relationship to purposes within the scope of the state's police powers, and arbitrary distinctions which do not actually promote such objectives cannot be sustained. *Nectow* v. *City of Cambridge*, 277 U. S., 183, 188, 48 S. Ct., 447, 72 L. Ed., 842; *Mid-State Advertising Corp.* v.

*Bond,* 274 N. Y., 82, 8 N. E. 2d, 286. A prohibition which cannot be equated with the evil to be remedied is arbitrary and unreasonable, *Defiance Milk Products Co.* v. *Du Mond,* 309 N. Y., 537, 132 N. E. 2d, 829.''

The Court finds that the statutes in question violate the requirement of equal protection of the laws and consequently violate the constitutional provisions above referred to of both the Ohio and the United States Constitutions.

The Court has examined and given careful consideration to the entire transcript of the testimony and all of the oral arguments as well as the written briefs of counsel in these cases. Many issues and questions of constitutional law have been argued exhaustively during the course of these proceedings. The Court bases its findings herein on its conclusion that the legislation involved is unconstitutional upon the grounds herein above set forth, and the Court considers these findings sufficient for a final determination of these cases.

The Court therefore finds that the Property Owners in case No. 46311, have sustained the allegations of their petition and their supplemental petition in that both the former and existing sections of the Revised Code above referred to are unconstitutional and void as constituting a taking of the property of the Property Owners without due process of law; and as being an attempt to take private property under the police power without compensation where no real and substantial relation to the public health, safety, morals, or welfare is shown; and as being an attempted denial to the Property Owners of the equal protection of the laws; and that the Property Owners are entitled to the relief prayed for. The defendant in said case is therefore enjoined from taking plaintiffs' property described in their petition and the property of any property owners similarly situated in Allen County and from proceeding against said plaintiffs and any property owners similarly situated in Allen County under either the sections of the former act or of the existing law, being former Sections 5515.21 to 5515.99, inclusive, Revised Code, and existing Sections 5516.01 to 5516.99, inclusive Revised Code; it is declared that the said former Act of the Legislature and the said existing Statutes are unconstitutional for the reasons above stated. The costs of said case No. 46311 are assessed against said defendant.

Cases 46970 and 47003 are dismissed at the costs of the petitioners.

Journal entries embodying the findings and rulings of the Court and entering judgments in accordance therewith may be drawn for filing in the respective cases.